2026 IL App (1st) 240371-U

No. 1-24-0371

Order filed February 11, 2026

Fourth Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| DEB BARDHAN, Individually and as Independent Administrator of the Estate of Arindam Bardhan, Deceased, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 2019 L 004362 |
| NORTHWESTERN MEMORIAL HOSPITAL, NORTHWESTERN MEDICAL FACULTY FOUNDATION, NORTHWESTERN MEDICAL GROUP, NORTHWESTERN MEMORIAL HEALTHCARE, NORTHWESTERN MEMORIAL PHYSICIANS GROUP, EDWIN WU, M.D., YUSRA R. CHEEMA, M.D., and HOSSEIN ARDEHALI, MD, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | Honorable Janet Brosnahan, Judge, Presiding. |
| (Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation, and Hossein Ardehali, M.D., Defendants-Appellees). | ) ) ) ) | |

PRESIDING JUSTICE NAVARRO delivered the judgment of the court.
Justices Lyle and Quish concurred in the judgment.

**ORDER**

¶ 1    *Held:*   The circuit court did not err when it dismissed plaintiff's wrongful death and survival act claims; affirmed.

¶ 2    Plaintiff, Deb Bardhan, individually, and as Independent Administrator of the Estate of Arindam Bardhan, deceased, filed a medical malpractice action based on negligence and asserted claims under the Illinois Wrongful Death Act (740 ILCS 180/0.01 *et. seq.* (West 2018)) and Illinois Survival Act (755 ILCS 5/27-6 (West 2018)) against defendants, Northwestern Memorial Hospital, Northwestern Medical Faculty Foundation, and Hossein Ardehali, MD. Plaintiff's brother, Arindam, received medical care from defendants in October 2010 after he fainted while running on a treadmill. Arindam died in July 2012. Thereafter, plaintiff filed a complaint against defendants, alleging wrongful death and survival claims based on the care Arindam received from defendants in 2010. Plaintiff sought damages on behalf of Arindam's parents, and himself, as Arindam's brother. Before trial, the circuit court dismissed plaintiff's wrongful death claims because Arindam had a wife at the time of death, and, as the surviving spouse, she was the only person entitled to damages under the Wrongful Death Act. The court also dismissed plaintiff's claims brought under the Survival Act because there was no evidence to support the claim that Arindam experienced conscious pain and suffering before he died. This appeal follows.

¶ 3                                                    I. BACKGROUND

¶ 4                                                 Plaintiff's Complaint

¶ 5    On October 27, 2014, plaintiff filed his complaint. Plaintiff alleged that Dr. Ardehali was an employee or agent of Northwestern Memorial Hospital and Northwestern Medical Faculty Foundation. Plaintiff's claims under the Survival Act and the Wrongful Death Act are based on the same allegations.

¶ 6    Plaintiff alleged that, on October 25, 2010, Arindam was taken to the emergency room and admitted to Northwestern Memorial Hospital after he fainted while working out on a treadmill.

About five days later, Arindam was discharged with the diagnoses of dehydration and syncope. Dr. Ardehali treated Arindam when he was in the hospital. On July 12, 2012, Arindam died of an unexplained cardiac issue. Results from genetic testing showed Arindam had Catecholaminergic Polymorphic Ventricular Tachycardia (CPVT), a genetic heart condition that could have been diagnosed by Dr. Ardehali at Northwestern Memorial Hospital when he was admitted there in October 2010.

¶ 7 Plaintiff alleged that defendants breached their duties when treating Arindam because they negligently discharged him with syncope and dehydration and failed to diagnose and treat CPVT. Plaintiff alleged that, as a result of defendants' negligence, Arindam experienced cardiac complications and death. Plaintiff sought damages under the Wrongful Death Act and Survival Act on behalf of himself, as his brother, and Arindam's parents.

¶ 8 Probate Case October 2014 to March 2018

¶ 9 On October 27, 2014, the probate court entered an order appointing plaintiff as independent administrator of Arindam's estate. That same day, plaintiff also filed an affidavit in the probate case, in which he averred that Arindam "died with no spouse, no children, never having been married," and that plaintiff, as Arindam's brother, and Arindam's parents were the sole surviving heirs. According to the affidavit, the estate's only remaining asset was the wrongful death and survival actions. The probate court also entered an order that day declaring plaintiff and Arindam's parents the only heirs. The probate court issued numerous continuance orders from December 2014 to March 2018.

¶ 10 Discovery in Law Division Case

¶ 11 During discovery in this case, plaintiff stated in interrogatories and testified at his deposition that Arindam was married when he died. Specifically, in response to defendants'

interrogatories, plaintiff stated that, at the time the alleged negligence occurred and on the date that Arindam died, the "decedent was married to Neha Wattas."

¶ 12    Plaintiff testified at his deposition on October 4, 2016, that Arindam married Wattas in 2006 in India. According to plaintiff, Arindam and Wattas did not take the steps to have their marriage "recognized" and recorded in the United States. Plaintiff explained that he and his wife were married in India, and that they had their marriage "registered legally" in the United States by getting a marriage license and registering it with the county court. At the time of his deposition, he had not spoken to Wattas in about 18 months.

¶ 13    On September 5, 2017, after plaintiff failed to produce or provide contact information for Wattas for a discovery deposition, the court entered an order barring plaintiff from calling Wattas to testify at trial.

¶ 14    Defendants' Motion for Summary Judgment on Wrongful Death Claims

¶ 15    In October 2017, defendants filed a motion for summary judgment on plaintiff's wrongful death claims, arguing that plaintiff could not prove damages. Defendants contended that, under the Wrongful Death Act (740 ILCS 180/2(a) (West 2018)), a decedent's wife and next of kin have exclusive rights to the recovery. Defendants argued that plaintiff conceded that, at the time of Arindam's death, he was married with no children, and that, therefore, Arindam's wife was the only beneficiary eligible to recover damages. According to defendants, plaintiff's answers to defendants' interrogatories and his testimony that Arindam was married at the time of his death were binding judicial admissions. Citing the court's September 5, 2017, order, defendants argued that Arindam's wife was barred from testifying at trial and that, therefore, plaintiff could not prove damages.

¶ 16    Hearing on Defendants' Motion for Summary Judgment on Wrongful Death Claims

¶ 17    At the January 2018 hearing on defendants' motion for summary judgment on the wrongful death claims, plaintiff's counsel informed the trial court that there were "some issues that I may need to straighten out for my case for the probate court or to figure out what is actually the bottom of this marriage issue. So, you know, I may need some time for that." The trial court asked plaintiff's counsel, "You filed a document in court saying he was never married. And that isn't true, is it?" Plaintiff's counsel responded, "Well, from what I was told. I didn't have the valid marriage for probate. Obviously in discovery a lot more information has come out. Like I said, if I need to go into probate and correct that for the estate, that is something I'm certainly going to do." The court instructed plaintiff's counsel that, by the time the case goes to trial, plaintiff will have to make clear "whether it's the wife or the brother" who is the proper heir and has the right to recover damages.

¶ 18    Following argument, the court denied defendants' motion for summary judgment on the wrongful death claims.

¶ 19                    Plaintiff's Motion to Continue Trial

¶ 20    On January 25, 2018, plaintiff moved to continue the trial date originally set for March 23, 2018, asserting that a question had arisen regarding the decedent's marital status, and that "[t]estimony has indicated that the decedent was allegedly married in India prior to immigrating to the United States." Plaintiff requested a short continuance "to complete expert discovery for both parties and conduct any necessary investigation regarding the plaintiff's alleged marital status." Plaintiff stated that it was important to permit him "to investigate this claim further to ensure that the proper claims are put forth at the time of trial to avoid unnecessary confusion and delay at and after trial." The court granted plaintiff's motion and struck the March 23, 2018, trial date.

¶ 21                    Defendants' Motion to Declare the Decedent's Proper Heir
                                     Under the Wrongful Death Act

¶ 22        On March 25, 2018, defendants filed a "Motion to Declare the Decedent's Proper Heir Under the Wrongful Death Act." Defendants asserted that the new trial date was five months away, and that, after more than three years of litigation, the parties did not know the identity of the rightful heir in plaintiff's wrongful death action. According to defendants, the overwhelming and undisputed evidence showed that Arindam left a surviving spouse and was married to Wattas at the time of his death. Defendants argued that, therefore, the court should declare Wattas the proper beneficiary under the Wrongful Death Act and permit defendants time within which to conduct discovery into her claim for damages.

¶ 23        To support their argument that the evidence showed that Arindam was married to Wattas at the time of his death, defendants continued to assert that in plaintiff's answers to defendants' interrogatories, he admitted that Arindam was married to Wattas at the time of his death, and in his deposition, he testified that Arindam and Wattas were married in December 2006. Defendants also asserted that in the years before Arindam's death, he held himself out as married to Wattas. Defendants noted that Wattas was his emergency contact and medical proxy, that Arindam represented to his physicians that he was married to Wattas, that Wattas attended medical visits with him, and that the emergency room physician informed Wattas, as Arindam's wife, that he had passed away. Defendants attached to their motion the Medical Examiner's Certification of Death and stated that the Commonwealth of Massachusetts acknowledged that he was married to Wattas at the time of his death.

¶ 24        In response, plaintiff moved to strike defendants' motion to declare heirship, arguing that defendants' motion sought to amend the order declaring heirship entered in the probate court. Plaintiff stated that the probate court had "determined that any questions regarding heirship must

be determined in the Probate Court" and that defendants' motion was not properly before the law division court. Plaintiff attached to his motion the probate court's March 21, 2018, order, which stated that "all matters related to questions of heirship to be determined by Probate Court."

¶ 25    In the court's case management order entered on April 4, 2018, the court granted plaintiff's motion to strike defendants' motion to declare heirship "based on probate order."

¶ 26                    Plaintiff's Voluntary Dismissal and Refiling

¶ 27    On April 24, 2018, plaintiff voluntarily dismissed the complaint under section 2-1009 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1009 (West 2018)). One year later, in 2019, plaintiff refiled the complaint, which continued to seek damages on behalf of himself as Arindam's brother and Arindam's surviving parents. Separately, the probate court issued numerous continuous orders continuing the case until September 2023.

¶ 28            Discovery in Law Division Case after Plaintiff Refiled the Complaint

¶ 29    After plaintiff refiled the complaint, in October 2019, defendants served plaintiff with a request for admissions of fact under Illinois Supreme Rule 216 (Ill. S. Ct. R. 216(a) (eff. July 1, 2014)), in which they requested plaintiff admit, among other things, that Arindam "was married to Neha Wattas at the time of his death." In the court's December 6, 2019, case management order, the court denied plaintiff's motion for extension of time to answer defendants' requests to admit and stated that the facts set forth in defendants' Rule 216 requests to admit were deemed admitted.

¶ 30    Defendants' Motion for Summary Judgment on Plaintiff's Survival Act Claims

¶ 31    In January 2020, defendants moved for summary judgment on plaintiff's claims under the Survival Act, arguing that plaintiff could not identify any genuine issue of material fact as to whether defendants' alleged negligence caused Arindam conscious pain and suffering before he died, which were the only damages plaintiff sought to recover under the Survival Act. Defendants

argued that there was no evidence that Arindam experienced any pain or suffering as a result of defendants' alleged failure to diagnose CPVT in October 2010.

¶ 32     In response, to support his argument that he presented evidence that Arindam suffered before he died, plaintiff cited and relied upon the deposition testimony of Dr. David Curly, the emergency medicine physician at Massachusetts General Hospital who saw Arindam when he arrived in the emergency room in 2012. In the court's written order issued on April 9, 2020, by Judge Daniel T. Gilliespie, the court denied defendants' motion for summary judgment on plaintiff's survival claims, concluding that there were genuine issues of material fact as to whether Arindam experienced conscious pain and suffering before he died.

¶ 33                    Trial Date and Motions *in Limine*

¶ 34     On March 15, 2023, the case was set for trial on August 16, 2023. On August 21, 2023, the circuit court, with Judge James P. Flannery presiding, denied plaintiff's emergency motion to continue trial. On that same day, the case preceded to trial in front of Judge Janet Adams Brosnahan.

¶ 35                    Proceedings on August 21, 2023

¶ 36     On the first day of trial proceedings, the court addressed the parties' pretrial motions. The court started with plaintiff's motion that sought to bar defendants from arguing that "decedent's wife, Neha Wattas, is not an heir of the decedent." In plaintiff's written motion on the issue, plaintiff argued that Wattas "could be entitled to damages under the Wrongful Death Act" and that "[a]ddressing the validity of the marriage at trial would create confusion of the issues for the jury." Plaintiff argued that there was a question of fact as to the proper heir of the estate, and the probate court was to determine the decedent's heirs if there was any recovery. To support this assertion, plaintiff cited the probate court's March 21, 2018, order, which stated that "all matters

related to questions of heirship to be determined by Probate Court." Plaintiff also cited the probate court's February 25, 2021, order that continued the probate case to February 2022 "for status Law Division action and contact with potential heir." According to plaintiff, pursuant to this order, plaintiff "must advise [Wattas] of the verdict and any potential award" and her "status as an heir," and, at that time, she "will advise the Court on how she would like to handle her claim or interest in the estate, thereafter."

¶ 37    At argument on plaintiff's motion, which the court granted, defense counsel did not object to plaintiff's motion. Defense counsel stated that they intended to "suggest that [Wattas] is the sole heir and was married to the decent [*sic*] at the time of his death." Plaintiff's counsel responded that the issue of heirship had not been decided yet, and the probate court was to determine heirship after trial, at which time Wattas would have the opportunity to expressly waive her right to any award.

¶ 38    During the argument on the issue, the court stated that it was "absolutely imperative" that the court "know who the heirs are in a wrongful death action." The court explained that, "[t]he only people that can get the money are the legal takers" and, if Arindam had a wife, "the only taker is the wife." The court further stated that plaintiff made a statement under oath that Arindam, his brother, "was married at the time of the death," and that Wattas was "the only person that can take" in the wrongful death action. The court then commented that, if Wattas is the only person who can take under the Wrongful Death Act, then the damages to Arindam's siblings and parents are irrelevant. The court explained that plaintiff, as Arindam's brother, and the surviving parents could not testify about how much Arindam's death affected their lives but could testify about "the type of person [Arindam] was" and "[t]heir observations of his role as a husband."

¶ 39    The court next addressed defendants' motion *in limine* that sought to admit evidence of Wattas's remarriage. Defense counsel suggested that the court either take judicial notice of their materials showing she had remarried or have the parties contact Wattas to confirm her marital status. In response, plaintiff's counsel told the court that she had not heard that Wattas had remarried and she could talk to Arindam's family, as she believed his family stayed in touch with Wattas's parents. The parties agreed that plaintiff would contact Wattas that night to "explain what's going on" and schedule a call with her the following day. The court concluded the argument by telling the parties to be "prepared tomorrow with citations to the testimony you think supports the survival claim."

¶ 40                    Proceedings on August 22, 2023

¶ 41    At the trial proceedings the next day, the court stated that plaintiff's counsel had advised the court that counsel contacted Wattas and confirmed that she had remarried. The court granted defendants' motion seeking to admit evidence of Wattas's remarriage. Plaintiff's counsel then told the court that, based on the court's previous ruling that Wattas was the only heir, Wattas was now willing to participate in the litigation and counsel requested the court allow Wattas to testify about her damages. In response, defense counsel argued that defendants would be prejudiced if the court opened discovery at trial and allowed Wattas to testify, as she had been previously barred from testifying pursuant to the court's September 5, 2017, order because plaintiff would not produce her for a deposition.

¶ 42    Following the parties' arguments, the court refused to vacate the September 5, 2017, order barring Wattas from testifying. The court stated that it would not vacate that order when plaintiff never moved to reconsider or vacate that order, which was entered before a previous judge nearly five years prior.

¶ 43 The court next granted defendants' motion *in limine* that sought to bar plaintiff's counsel from arguing that the marriage between Wattas and Arindam was invalid. During argument on the motion, defense counsel argued that there was no evidence that the marriage was invalid and that, under the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/213 (West 2022)), "marriages contracted outside of the State, that were valid at the time of the contract *** are valid in the State, except where contrary to the public policy." In response, plaintiff's counsel disagreed that getting married in another state is "the same as getting married in India and not registering it" and stated that "but the plaintiff has never taken a written position in this case anywhere that [Wattas] is not an heir or a potential heir."

¶ 44 The court also granted defendants' motion *in limine* that sought to bar plaintiff from testifying about his own, as well as his parents,' mental anguish or alleged loss of society given that plaintiff and Arindam's parents were not takers under the Wrongful Death Act.

¶ 45 Later that day, plaintiff's counsel continued to assert that the probate court had continued the probate case until after the verdict and argued that it would be prejudicial to "put on a trial and have a verdict on just a spouse with no damages" if the probate court later determined that Wattas was not a legal spouse or that she had disclaimed her interest. The court explained that "[t]here has to be a determination on who the jury can hear from that has a valid claim for wrongful death damages." Plaintiff's counsel noted that she believed that Wattas "was going to waive her interest."

¶ 46 Defense counsel responded that plaintiff filed the case in 2014 and "had almost a decade to clear it up, and the orders in the probate court have never demonstrated that they have attempted to." Plaintiff's counsel stated that Wattas has "never been asked whether she wants to be an heir or whether she's declaring that she wants to be an heir under the Wrongful Death Act

or in probate court" and that the probate court's orders continued the case for "status post verdict of heirship and settlement of any funds."

¶ 47                              Proceedings on August 23, 2023

¶ 48        At the trial proceedings the next day, plaintiff filed a motion entitled, "Emergency Motion for Reconsideration of Court's Order Declaring Neha Wattas as Decedent's Legal Spouse Or, In the Alternative, Plaintiff's Emergency Motion for Supreme Court Rule 308 Certification." In plaintiff's written motion, he argued that the court should have held an evidentiary hearing on the issue of heirship where plaintiff could present evidence to support that the marriage of Wattas and Arindam was invalid and that Wattas did not want to be deemed Arindam's wife under the Wrongful Death Act. Plaintiff also asserted that the court's determination that Wattas was Arindam's wife and heir under the Wrongful Death Act reversed and conflicted with the probate court's March 21, 2018, order, which stated that "all matters related to questions of heirship to be determined by Probate Court."

¶ 49        At argument on the motion, the court clarified that it had previously stated that plaintiff's "statement under oath of the fact within his knowledge was a judicial admission." The court also explained that plaintiff testified under oath that Arindam and Wattas were married, which was "a fact within his knowledge" and a "deliberate unequivocal statement made by a party."

¶ 50        Defense counsel orally moved to dismiss the wrongful death claim, arguing that plaintiff's counsel had repeatedly stated that Wattas, who was the sole beneficiary, did not want to testify and was not seeking damages. The court told the parties that it would take defendants' motion to dismiss under advisement. The court concluded the hearing by stating that plaintiff brought the first action in 2014 and has "done nothing to bring this issue to resolution which is an

issue which needed to be determined in order for the Jury to hear from the rightful claimant under the Wrongful Death Act." The court then advised plaintiff's counsel that counsel had an ethical obligation to amend the lawsuit, or the court would have to rule on the motion to dismiss.

¶ 51       The case then proceeded to jury selection.

¶ 52                    Trial Court's Dismissal of Wrongful Death Claims

¶ 53       When the parties reconvened that afternoon after jury selection, the court explained that it had "serious concerns about the ethics of proceeding to take this case in front of a jury" where it had made the determination that Wattas is the only person entitled to recover under the Wrongful Death Act, and plaintiff's counsel has represented that she "has absolutely no interest in the damages." In response, plaintiff's counsel informed the court that during the break, Wattas had informed plaintiff that "now that [Wattas] knows where things stand, she wants to be the party of interest," and she did "not want the case to be dismissed with prejudice."

¶ 54       Defendants renewed their motion to dismiss, arguing that Wattas, the sole beneficiary, had stated that she "wants nothing to do with this case, and does not want to recover damages." The court dismissed plaintiff's wrongful death claims with prejudice. The court noted that in defendants' request to admit served on plaintiff, he was required to timely admit or deny that Arindam was married to Wattas at the time of his death, and the court entered an order in 2019 deeming those facts admitted. The court stated that plaintiff filed the lawsuit "very specifically for the benefit of the decedent's brother and parents" and proceeded with the litigation even though they were not the lawful takers. The court stated that plaintiff had 11 years to obtain a waiver of rights from her.

¶ 55       The court remarked that there was no disclosure in discovery that "anybody could offer any information" about Wattas's grief or suffering or her relationship with Arindam. The court

explained that Arindam's father did not testify in his deposition about Wattas's damages, and based on plaintiff's discovery deposition and disclosures, plaintiff could not testify to Wattas's damages, as plaintiff never disclosed his testimony about the relationship that Arindam had with Wattas.

¶ 56                    Trial Court's Dismissal of Plaintiff's Survival Claims

¶ 57        The court next addressed defendants' motion *in limine* regarding plaintiff's survival claims, in which defendants sought to bar any claim for damages under the Survival Act based on plaintiff failing to present evidence that Arindam experienced conscious pain and suffering before he died.

¶ 58        In defendants' written motion, they argued that plaintiff did not produce any evidence that Arindam experienced pain and suffering as a result of defendants' alleged negligence to diagnose him with CPVT, a genetic heart condition, in October 2010. Defendants asserted that following Arindam's October 2010 visit at Northwestern, Arindam continued living a healthy lifestyle for the next 18 months, he kept exercising and eating well, and he never fainted again. Defendants argued that the evidence also showed that Arindam collapsed and experienced sudden cardiac arrest on July 12, 2012, after which he never regained consciousness and did not survive for any period of time. Defendants argued therefore that, even if plaintiff could link Arindam's cardiac arrest to defendants' alleged negligence, plaintiff produced no evidence that Arindam experienced conscious pain and suffering when he died. As such, defendants argued, plaintiff could not maintain a claim under the Survival Act to recover damages for pain and suffering.

¶ 59        At the argument on defendants' motion, the court noted that in opposition, plaintiff had tendered his response to defendants' motion for summary judgment on this issue. The court noted that plaintiff's response relied upon the testimony of Dr. Curly, who was not going to testify at trial. In response, plaintiff's counsel argued that plaintiff's expert, Dr. Kahn, "covered what Dr.

Curly said." The court, however, concluded that, even if it considered Dr. Curly's testimony because it "could somehow be introduced through Dr. Kahn," Dr. Curly's deposition testimony cited and relied upon by plaintiff did not support that Arindam experienced conscious pain and suffering before he died. The court dismissed with prejudice plaintiff's survival claims "for lack of evidence to support it."

¶ 60                                    Posttrial Proceedings

¶ 61      In plaintiff's posttrial motion, he asserted that he was "entitled to a new trial" for numerous reasons and requested the court vacate the orders dismissing his wrongful death and survival claims. Plaintiff asserted that based on the court's determination of heirship, plaintiff's counsel "updated the Plaintiff's affidavit and order of heirship to reflect [Wattas] as the sole heir to the Estate."

¶ 62      Plaintiff attached to the motion an affidavit in which he averred, among other things, that Wattas married Arindam in India before he died and that the marriage was never registered in the United States. He also stated that Wattas knew about the litigation and did not want to be involved in it. According to plaintiff, during trial when the heirship issues arose, Wattas stated she did not want to participate in the case and, on the day the case was dismissed, he called Wattas, and she agreed to "collect to keep the case going for Arindam and our family." He stated that he never asked Wattas to waive her interest in the case before trial, as he "always intended to advise her if anything came out of it and make sure she did not want anything from it."

¶ 63      Plaintiff also attached to his posttrial motion an "Amended Order Declaring Heirship" entered in the probate court on October 31, 2023, which stated that, "[a]fter considering evidence concerning heirship, the Court declares that the following are the only heirs of the decedent: Neha Wattas, spouse."

¶ 64      In defendants' response to plaintiff's posttrial motion, they asserted that in plaintiff's affidavit and amended order of heirship attached to his motion, he admitted that Arindam was married to Wattas at the time of death.

¶ 65      In plaintiff's reply to his posttrial motion, he asserted that the court failed to consider the effect of a "potential disclaimer" and dismissed the wrongful death action based on an erroneous conclusion of heirship. He stated that "a proper hearing has since been held in the probate court, where Ms. Wattas disclaimed her rights, leaving the plaintiffs as heirs."

¶ 66      Plaintiff attached to his reply a "Disclaimer & Assignment" signed by Wattas on November 7, 2023, and an order entered by the probate court on November 8, 2023. In the disclaimer, Wattas averred that she was Arindam's surviving spouse. She also disclaimed "any interest in proceeds" from the wrongful death action and assigned all right, title and interest to the proceeds to Arindam's parents and plaintiff, as Arindam's brother.

¶ 67      As for the November 8, 2023, order entered in the probate court, the order stated that the court "was presented with the disclaimer of Neha Wattas, filed November 7, 2023" and that "[g]iven said disclaimer, Neha Wattas is treated as if she predeceased Arindam Bardhan." The order provided that "any asset of estate shall be distributed pursuant to 755 ILCS 5/2-1."

¶ 68      On the same day that plaintiff filed his reply, he filed a motion requesting leave to supplement his posttrial motion with the "Disclaimer & Assignment" notarized and signed by Wattas on November 7, 2023, and the probate court's November 8, 2023, order.

¶ 69      At the hearing on plaintiff's posttrial motions, the court denied plaintiff's motion for leave to supplement the posttrial motion with the disclaimer and November 8, 2023, probate court order. The court also denied plaintiff's posttrial motion. In doing so, the court highlighted that since its ruling dismissing plaintiff's wrongful death action, the probate court had also determined

that Wattas was Arindam's legal spouse when he died and that "[b]ecause the probate court ultimately reached the very same conclusion," plaintiff cannot demonstrate prejudice.

¶ 70    Thereafter, plaintiff filed an emergency motion to reconsider the court's order denying the posttrial motion, arguing, among other things, that the court erred in refusing to consider the new evidence of Wattas's disclaimer and the probate court's November 8, 2023, order, accepting that disclaimer. The trial court, with Judge Kathy Flanagan presiding, denied plaintiff's motion to reconsider. This appeal follows.

¶ 71                                    II. ANALYSIS

¶ 72                                    Wrongful Death Act

¶ 73    On appeal, plaintiff argues the court erred when it declared Wattas the heir and surviving spouse under the Wrongful Death Act and then dismissed the wrongful death action for insufficient evidence of damages. For the following reasons, we affirm.

¶ 74    The Wrongful Death Act seeks "to protect the legal right of survivors to be compensated for the pecuniary loss they may have sustained by reason of the death of the injured person." *Johnson v. Provena St. Therese Medical Center*, 334 Ill. App. 3d 581, 589 (2002). The Act provides "a remedy to a defined class of individuals upon the wrongful death of another." *Morris v. William L. Dawson Nursing Center, Inc.*, 187 Ill. 2d 494, 496 (1999). "[A] wrongful-death action does not accrue until death and is not brought for the benefit of the decedent's estate, but for the next of kin who are the true parties in interest." *Carter v. SSC Odin Operating Co., LLC,* 2012 IL 113204, ¶ 57.

¶ 75    Under the Wrongful Death Act, "the amount recovered in every such action shall be for the exclusive benefit of the surviving spouse and next of kin of such deceased person." 740 ILCS 180/2(a) (West 2022). The amount recovered "shall be distributed 'to each of the surviving

spouse and next of kin of such deceased person in the proportion, as determined by the court, that the percentage of dependency of each such person upon the deceased person bears to the sum of the percentages of dependency of all such persons upon the deceased person.' " *Carter*, 2012 IL 113204, ¶ 39 (quoting 740 ILCS 180/2 (West 2006)). "[T]he personal representative in a wrongful-death claim is 'merely a nominal party to this action, effectively filing suit as a statutory trustee on behalf of the surviving spouse and next of kin, who are the true parties in interest.' " *Id.* ¶ 33 (quoting *Glenn v. Johnson*, 198 Ill. 2d 575, 583 (2002)). "[F]or purposes of determining a decedent's next of kin within the meaning of the Wrongful Death Act, Illinois courts look to the laws of intestacy." *Morris*, 187 Ill. 2d at 497. The rules of descent and distribution in the Probate Act of 1975 set forth how the intestate real and personal estate of a resident decedent shall be distributed. 755 ILCS 5/2-1 (West 2014). Under this section, when a decedent dies with a surviving spouse but no descendant, then the entire estate is distributed to the surviving spouse. *Id.* § 5/2-1(c).

¶ 76    Here, the court concluded that, based on plaintiff's judicial admission that Arindam was married to Wattas at the time of death, Wattas was the surviving spouse and the only person entitled to recover under the Wrongful Death Act. The court then dismissed the wrongful death action after it determined that plaintiff did not sufficiently disclose plaintiff and Arindam's father as witnesses who could testify about Wattas's damages. We review a trial court's ruling on a motion to dismiss *de novo*. *Bouton v. Bailie*, 2014 IL App (3d) 130406, ¶ 7.

¶ 77    We first address the court's finding that plaintiff made a judicial admission that Arindam was married to Wattas when he died.

¶ 78    "A judicial admission is a statement made during a judicial proceeding or contained in a document filed with the court" that is binding on the party that made it. *Williams Nationalease,*

*Ltd. v. Motter*, 271 Ill. App. 3d 594, 616 (1995). "A judicial admission is a deliberate, clear, unequivocal statement by a party concerning a concrete fact within that party's knowledge." *In re Estate of Ivy*, 2019 IL App (1st) 181691, ¶ 64. For testimony to be a binding judicial admission, the testimony must be "peculiarly within the knowledge of the deponent," and the assertion must be unequivocal. *Mitchell/Roberts Partnership v. Williamson Energy*, *LLC,* 2025 IL App (5th) 240354, ¶ 84. "Once made by a party, a judicial admission may not be contradicted in a motion for summary judgment or at trial." *Id.* ¶ 82.

¶ 79        "Judicial admissions include admissions made in pleadings, testimony in open court, stipulations, and in response to requests to admit." *In re Estate of Ivy*, 2019 IL App (1st) 181691, ¶ 64. Judicial admissions may be made at a discovery deposition if the statements are " 'so deliberate, detailed, and unequivocal, as to matters with the party's personal knowledge.' " *Snow v. Power Construction Co., LLC*, 2017 IL App (1st) 151226, ¶ 81 (quoting *Caponi v. Larry's 66*, 236 Ill. App. 3d 660, 671 (1992)); *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 210-13 (1989). A judicial admission may also be made in answers to interrogatories. *Van's Material Co.*, 131 Ill. 2d at 210-13; *Brummet v. Farel*, 217 Ill. App. 3d 264, 267 (1991). The determination as to whether a statement is a judicial admission "must be decided under the circumstances in each case," and the statement "must be given a meaning consistent with the context in which it was found and in relation to the other testimony and evidence presented." *Mitchell/Roberts Partnership*, *LLC,* 2025 IL App (5th) 240354, ¶ 83.

¶ 80        Although cases have applied both the *de novo* and abuse of discretion standards of review when determining whether a statement is a judicial admission, under either standard, the trial court did not err in finding that plaintiff made a judicial admission. See *Crittenden v. Cook County Commission on Human Rights*, 2012 IL App (1st) 112437, ¶¶ 46-48.

¶ 81 In plaintiff's deposition, he unequivocally testified that his brother, Arindam, married Wattas in India in 2006. He also testified that Arindam's wife called him to inform him that Arindam had been taken to the hospital and was not recovering. Likewise, in response to defendants' interrogatories, plaintiff unequivocally stated that, at the time Arindam died, the "decedent was married to Neha Wattas," and he listed Wattas as an individual having knowledge of the facts of the alleged negligence. Further, in the court's December 6, 2019, order, it held that the facts set forth in defendants' Rule 216 requests to admit were deemed admitted, which included the fact that Arindam "was married to Neha Wattas at the time of his death." See *Moy v. Ng*, 371 Ill. App. 3d 957, 960 (2007) ("Where a party fails to properly respond to a Rule 216 request to admit facts, those factual matters in the request are deemed judicial admissions which cannot later be controverted by any contrary evidence.").

¶ 82 We note that plaintiff argues that the determination of whether the decedent was legally married was a legal conclusion that the court could not find to be judicially admitted. However, plaintiff forfeited any such argument by failing to respond or object to the court's order that deemed the facts set forth in defendants' Rule 216 requests to admit as admissions, which included the statement that Arindam was "married to Neha Wattas at the time of his death."

¶ 83 Based on this evidence, the court properly found that plaintiff made the judicial admission that Arindam was married to Wattas when he died. As such, the court did not err when it found that Wattas, as Arindam's surviving spouse, is the sole heir entitled to damages under the Wrongful Death Act. See 740 ILCS 180/2(a) (West 2022) ("the amount recovered in every such action shall be for the exclusive benefit of the surviving spouse and next of kin of such deceased person").

¶ 84     Plaintiff nevertheless contends that the court sitting in the law division did not have jurisdiction to declare heirs or modify the order of heirship entered in the probate case.

¶ 85     "The circuit court of Cook County is a court of general jurisdiction." *Fulton-Carroll Center, Inc. v. Industrial Council of Northwest Chicago, Inc.*, 256 Ill. App. 3d 821, 823 (1993) (citing Ill. Const. 1970, art. VI, § 9). "The fact that the circuit court, for administrative purposes, has established divisions to hear certain types of cases does not affect its jurisdiction to hear all justiciable matters, and does not affect the power of any of its judges to hear and dispose of any matter properly pending in the circuit court." *Id*.

¶ 86     Plaintiff asserts that because the probate court entered an order declaring heirship in October 2014 before this lawsuit was filed in the law division, the probate court was the "first to take jurisdiction" over the issue of heirship and consequently retained and had exclusive jurisdiction over the issue. According to plaintiff, the law division court here did not have authority to declare Wattas the spouse.

¶ 87     The probate court initially entered the October 2014 order declaring plaintiff and his parents the heirs. However, the record shows that when the probate court entered that order, plaintiff had represented in an affidavit filed in that court that Arindam "died with no spouse, no children, never having been married." Contrary to plaintiff's affidavit filed in the probate court, in this case, as previously discussed, plaintiff's 2016 deposition testimony, answers to interrogatories, and his judicial admission in response to the requests to admit expressly contradicted his statement in the October 2014 affidavit filed in the probate case, as he stated in this case that Arindam married Wattas in 2006 in India and was married to her when he died.

¶ 88     Further, at the January 2018 hearing on defendants' motion for summary judgment, plaintiff's counsel acknowledged that plaintiff had filed the affidavit in the probate court stating

that Arindam "was never married" and counsel told the court that "[o]bviously in discovery a lot more information has come out" and counsel would "correct that for the estate" in the probate court if it needed to. However, while the probate court entered continuance orders on "potential heir," it never entered an amended order on heirship based on any new information, including plaintiff's admission made in this case that Arindam married Wattas in 2006 and was married to her when he died. The record also does not show that plaintiff requested the probate court hold a hearing to determine whether the marriage of Arindam and Wattas in 2006 in India was valid.

¶ 89       Rather, during arguments in pretrial motions in August 2023, plaintiff asserted that he could argue general "damages to the estate," and that the probate court would determine heirship after trial, at which time Wattas could expressly waive her interest to any award. However, to prove a wrongful death claim, a plaintiff must establish that "pecuniary damages occurred to persons designated under the Wrongful Death Act." *Rodgers v. Cook County*, 2013 IL App (1st) 123460, ¶ 31. The jury may award "damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, including damages for grief, sorrow, and mental suffering, and punitive damages when applicable, to the surviving spouse and next of kin of such deceased person." 740 ILCS 180/2(a) (West 2022). As such, the court properly concluded that before the case went before the jury, it had to declare the surviving spouse and person entitled to damages under the Wrongful Death Act.

¶ 90       Under these circumstances, the court properly exercised its authority under the Wrongful Death Act to determine Arindam's surviving spouse and next of kin who is entitled to an award of damages under the Wrongful Death Act.

¶ 91       Plaintiff also argues that the court erred by declaring Wattas the surviving spouse and heir without determining whether the marriage between her and Arindam was legally valid.

Plaintiff asserts that defendants produced no documentation validating the marriage, such as a marriage license or any subsequent validation.

¶ 92 Under the Probate Act, "[t]he ascertainment of heirship may be made from (1) an affidavit of any person stating the facts from which the heirship of the decedent can be ascertained *** or (2) from evidence either in narrative form or by questions and answers which are reduced to writing and certified by the court declaring the heirship." 755 ILCS 5/5-3(b) (West 2022). Further, under section 5-3(c) of the Probate Act, "[a]n order of the court declaring heirship is prima facie evidence of the heirship, but any other legal method of proving heirship may be resorted to by any party interested therein in any place or court where the question may arise." *Id.* § 5/5-3(c). "However, the existence of an order of heirship does not shift the burden of persuasion to the party challenging the heirship to 'prove the negative.' " *Bangaly v. Baggiani*, 2014 IL App (1st) 123760, ¶ 175 (quoting *Estate of Severson*, 107 Ill. App. 3d 634, 636 (1982)). Rather, "[a]s in any civil proceeding, the burden of proof in an heirship controversy rests with the party claiming heirship, because the claimant is asserting the affirmative issues." (Internal quotations omitted.) *Id.* (quoting *Estate of Severson*, 107 Ill. App. 3d at 636). In addition, " '[a] marriage which may have been celebrated or had in any foreign state or country, may be proved by the acknowledgement of the parties, their cohabitation, and other circumstantial testimony.' " *Id.* ¶ 179 (quoting 750 ILCS 5/409 (West 2010)).

¶ 93 Here, as previously discussed, based on plaintiff's judicial admission that Arindam married Wattas in 2006 and was married to her when he died, the court properly determined that Wattas was the surviving spouse entitled to an award of damages under the Wrongful Death Act.

¶ 94 The evidence of plaintiff's judicial admission sufficiently rebutted any presumption of heirship created by the probate court's October 2014 order declaring plaintiff and his parents the

heirs, which was entered based on plaintiff's contradictory affidavit filed in the probate court averring that Arindam "died with no spouse, no children, never having been married." Further, plaintiff had the burden of proof on heirship, as he was the party asserting that he and his parents are Arindam's heirs. See *id.* ¶¶ 175-176. Plaintiff admitted that Wattas married Arindam in 2006 in India and was married to her when he died, but during the nine years of litigation, there is nothing in the record to show that before the trial proceedings, he requested any court to hold a hearing to determine whether their marriage was valid. Rather, as previously discussed, on the first day of proceedings, plaintiff asserted that he could argue general damages to the estate, after which the probate court would determine heirship after trial and Wattas could decide if she wanted to disclaim her interest, an argument which the trial court properly rejected.

¶ 95 The proceedings in the probate court following the court's dismissal of the wrongful death claims support the trial court's order declaring Wattas the surviving spouse. Specifically, plaintiff filed an affidavit in the probate court averring that Wattas "married my brother, Arindam Bardham, in India before his death." Although he stated that "[t]heir marriage was never registered in the United States," the affidavit also stated he "wanted her to be involved but did not want to cause her any more pain," and his "family would have been thrilled if [Wattas] had agreed to pursue or be part of this matter." He also stated that he "never asked [Wattas] to waive her interest in this case before trial because I always intended to advise her if anything came out of it and make sure she did not want anything from it." This same day, the probate court entered an amended order declaring heirship, in which it declared, "[a]fter considering evidence concerning heirship," Wattas was the spouse and only heir. As such, plaintiff's action in probate court after the proceedings in this case supports the trial court's order declaring Wattas the surviving spouse of

Arindam. See *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004) ("a party cannot complain of error which that party induced the court to make or to which that party consented").

¶ 96      Accordingly, under these circumstances, the court properly declared Wattas the surviving spouse under the Wrongful Death Act, and we affirm that order.

¶ 97      Plaintiff next contends that the court erred when it dismissed the wrongful death action based on insufficient evidence of damages. He argues that the only evidence needed to establish a *prima facie* case of damages was the existence of a marital relationship, as the law presumes damages based on the existence of the marital relationship alone. Plaintiff also asserts that the court erred in concluding that plaintiff and Arindam's father were never disclosed regarding facts relevant to Wattas's spousal damages.

¶ 98      The "jury in a wrongful death suit may award damages to compensate the surviving spouse and next of kin for the 'pecuniary injuries' resulting from the individual's death." *Racky v. Belfor USA Group, Inc.*, 2017 IL App (1st) 153446, ¶ 144 (quoting 740 ILCS 180/2 (West 2012)). "These injuries include damages for grief, sorrow, and mental suffering to the surviving spouse and next of kin of such deceased person." *Id*. "Evidentiary rulings, such as rulings on motions *in limine*, are generally left to the discretion of the trial court and will not be reversed on appeal unless the court abused that discretion." *Avila v. Chicago Transit Authority*, 2021 IL App (1st) 190636, ¶ 61.

¶ 99      Initially, we note that, during the proceedings, plaintiff did not raise the argument that Wattas's damages are presumed based on the marital relationship. Rather, plaintiff raised the issue for the first time in his reply brief to his posttrial motion. See *People v. McCoy*, 2016 IL App (1st) 130988, ¶ 55 ("To preserve an issue for review, a defendant must both object at trial and raise the issue in a written posttrial motion."). Thus, we find that plaintiff forfeited this argument.

¶ 100      Moreover, plaintiff's complaint sought damages only on behalf of plaintiff and his parents, and plaintiff prosecuted the case for nine years on behalf of plaintiff and his parents, not for the benefit of Wattas. Before the court dismissed the wrongful death action, the court advised plaintiff to amend the lawsuit, but plaintiff never did so. We therefore disagree with plaintiff's argument that the court erred because Wattas's damages are presumed based on the marital relationship.

¶ 101      Further, in dismissing the wrongful death action, the court remarked that plaintiff filed the lawsuit "very specifically for the benefit of the decedent's brother and parents," and the complaint did not mention the "existence of a surviving spouse." The court also highlighted that the lawsuit was "prosecuted for the past 11 years for the benefit of the decedent's brother and his parents" and it was "never prosecuted for Neha Wattas." Under these circumstances, where the complaint sought damages on behalf of plaintiff and Arindam's parents and plaintiff prosecuted the case for nine years on their behalf without disclosing Wattas as an interested party, the court did not abuse its discretion in concluding that plaintiff did not properly disclose plaintiff and Arindam's father as witnesses to testify about facts relating to Wattas's damages as the surviving spouse.

¶ 102      We note that, to support plaintiff's argument that he properly disclosed himself and Arindam's father as witnesses who could testify about Wattas's damages, he cites his response to defendants' Rule 213 interrogatories (Ill. S. Ct. R. 213(f) (eff. Jan. 1, 2018)), in which he stated that plaintiff will testify about "Arindam's relationship with his family and how Arindam's injuries and death affected, changed and impacted him and their family." He also cites certain statements from his deposition testimony including: "[Arindam] was my biggest mentor, champion, the person I looked up to. He was my strength and pillar"; Arindam's daily activities included

"spend[ing] time with his wife"; "none of our family members can get over this. It's been very painful for everyone"; and he heard about Arindam when Wattas called him crying to tell him, "I just got a call that he fainted, he's been taken to the emergency room and that he's not recovering. Can you please call them and see what's going on." These statements are not sufficient to support that plaintiff properly disclosed plaintiff and his father as witnesses who could testify about Wattas's spousal damages. The court did not abuse its discretion in determining that plaintiff and plaintiff's father could not testify about Wattas's damages.

¶ 103      Plaintiff also asserts that when the court refused to vacate the September 5, 2017, order barring Wattas from testifying, the court abused its discretion by failing to consider the changed facts or circumstances of the case since that order was entered, *i.e.*, Wattas being declared the sole heir. See *Bulthaup v. Young*, 2025 IL App (1st) 232407-U, ¶ 37 (citing *Richichi v. City of Chicago*, 49 Ill. App. 2d 320, 325 (1964), which states "[a] judge has the right to review and reconsider a prior judge's order 'if in his judgment it was erroneous and he had the duty to do so if changed facts or circumstances make the prior order unjust.' ").

¶ 104      Judge Jerry A. Esrig entered the September 5, 2017, order because plaintiff failed to provide Wattas's contact information and a date for her deposition. As previously discussed, plaintiff then proceeded to prosecute the case on behalf of plaintiff and Arindam's parents, and he refiled his complaint in 2019, which continued to seek damages on behalf of plaintiff and his parents. He never attempted to vacate or move the court to reconsider the order barring Wattas from testifying until the August 2023 trial, when Judge Brosnahan declared Wattas the sole heir under the Wrongful Death Act. Under these facts, we cannot find that the court abused its discretion by refusing to vacate the September 5, 2017, order barring Wattas from testifying.

¶ 105    Plaintiff further contends that the court erred by dismissing with prejudice plaintiff's wrongful death claims without notice or an evidentiary hearing. He asserts that because defendants' motion *in limine* and follow up motion to dismiss sought summary judgment, he was entitled to notice and an opportunity to be heard before the court granted the motion.

¶ 106    Initially, we note that, based on the court's orders declaring Wattas the surviving spouse and finding that plaintiff did not properly disclose evidence of spousal damages in the wrongful death action, there were no questions of material fact for a jury to consider on plaintiff's wrongful death claim. See *Seef v. Ingalls Memorial Hospital*, 311 Ill. App. 3d 7, 18-19 (1999) (concluding that regardless of whether the defendants' motion was a motion to dismiss or an untimely motion for summary judgment, "there were no genuine issues of material fact for a jury to consider"). The court therefore properly dismissed the wrongful death action because plaintiff could not establish a *prima facie* case. See *Rodgers*, 2013 IL App (1st) 123460, ¶ 31 (to prove a wrongful death claim, a plaintiff must establish that "pecuniary damages occurred to persons designated under the Wrongful Death Act").

¶ 107    Further, plaintiff had an opportunity to demonstrate the existence of a genuine issue of material fact, conduct discovery on the relevant issues, present evidence, and argue against dismissal. See *c.f. Peterson v. Randhava*, 313 Ill. App. 3d 1, 12 (2000) (where the trial court determined what type of motion the defendant should file and then, without waiting for the defendant to file it, granted the motion and dismissed the case without giving the plaintiff an opportunity to respond and raise objections, the court noted that the plaintiff was deprived of the "opportunity to conduct discovery on the relevant issues, present evidence and argue against dismissal"). The record shows that as early as January 2018, the trial court instructed plaintiff that, by the time the case goes to trial, plaintiff would have to make clear "whether it's the wife or the

brother" who is the proper heir and has the right to recover damages, and plaintiff requested a continuance of the March 2018 trial date "to conduct any necessary investigation regarding the plaintiff's alleged marital status." However, after refiling the complaint and five years later in August 2023, on the first day of trial proceedings, plaintiff's counsel told the court that the issue had not yet been determined.

¶ 108   Further, discovery was complete, and before the court dismissed the wrongful death action, the court presided over three days of arguments, where both parties had the opportunity to present argument, evidence, pretrial motions, and objections. Accordingly, we disagree with plaintiff's assertion that the court erred by dismissing the wrongful death action without notice or an evidentiary hearing.

¶ 109   Plaintiff next contends that the proceedings in the probate court after trial establish that the court "tried this case on behalf of the wrong family member." After trial proceedings, on November 7, 2023, Wattas filed a disclaimer in the probate court, in which she averred she was the surviving spouse of Arindam and she disclaimed any interest in the wrongful death action. According to plaintiff, Wattas's disclaimer shows that, at the time of Arindam's death, plaintiff and his parents were the heirs and entitled to wrongful death benefits.

¶ 110   Under the Probate Act, "[a] person to whom any property or interest therein passes, by whatever means, may disclaim the property or interest in whole or in part by delivering or filing a written disclaimer as hereinafter provided." 755 ILCS 5/2-7(a) (West 2022). The Probate Act provides that the "disclaimer shall (1) describe the property or part or interest disclaimed, (2) be signed by the disclaimant or his representative and (3) declare the disclaimer and the extent thereof." *Id.* § 5/2-7(b).

¶ 111     After the August 2023 proceedings, the probate court entered an amended heirship order declaring "Neha Wattas, spouse" the only heir, which supports the trial court's determination that Wattas was Arindam's surviving spouse entitled to damages under the Wrongful Death Act. Although Wattas subsequently filed a disclaimer on November 7, 2023, and the probate court accepted that disclaimer, Wattas's written disclaimer did not exist during the nearly nine years of litigation, and it was not presented at the proceedings when the court dismissed plaintiff's wrongful death action. See *Wickham v. Carmichael Leasing Co., Inc.*, 2025 IL App (1st) 240255-U, ¶ 39 ("Trial courts should not permit litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the trial court erred in its ruling.") (Internal quotations omitted.) (quoting *Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242, 248 (1991)). There is also nothing in the record to show that the court denied plaintiff leave to file any such written disclaimer pursuant to the Probate Act. See 755 ILCS 5/2-7 (West 2022). Accordingly, the posttrial proceedings do not establish that the court tried the case on behalf of the wrong family member, and we disagree that the court erred by not allowing Wattas to disclaim her interest.

¶ 112     We also disagree with plaintiff's assertion that the court "foisted an unwanted heirship" on Wattas. As previously discussed, under the Wrongful Death Act, the amount recovered in such action "shall be for the exclusive benefit of the surviving spouse and next of kin of such deceased person." 740 ILCS 180/2(a) (West 2022). As such, under the Wrongful Death Act, Wattas as Arindam's surviving spouse, was entitled to the amount recovered in a wrongful death action.

¶ 113                                    Survival Act

¶ 114 Plaintiff argues that the court erred in dismissing his survival action because there was sufficient evidence to create a fact question regarding whether Arindam experienced conscious pain and suffering before he died.

¶ 115 Initially, we note that plaintiff argues that the court erred because in dismissing his survival action, it *sua sponte* converted defendants' motion *in limine*, which sought to bar any claim for damages recoverable under the Survival Act, into a dispositive motion without giving plaintiff a fair opportunity to be heard.

¶ 116 Plaintiff never argued at the hearing or in his posttrial motion that the court improperly converted defendants' motion *in limine* into a dispositive motion. "It is well settled that issues not raised in the trial court are forfeited and may not be raised for the first time on appeal." *Bank of New York Mellon v. Rogers*, 2016 IL App (2d) 150712, ¶ 72. "A party may not urge as error on review of the ruling on the party's post-trial motion any point, ground, or relief not specified in the motion." Ill. S. Ct. R. 366(b)(2)(iii) (eff. Feb. 1, 1994). Therefore, plaintiff's argument that the court erred because it converted defendants' motion *in limine* into a dispositive motion and then dismissed the survival action for lack of evidence is forfeited for failing to raise the issue in the trial court.

¶ 117 Additionally, before the court dismissed the survival action, discovery was closed, and plaintiff had the opportunity to present argument and evidence in response to defendants' motion *in limine*. At the hearing on the motion, the court noted that, in response to defendants' motion, plaintiff had tendered to the court his written response to defendants' previously filed motion for summary judgment. Plaintiff then had the opportunity to orally respond, present evidence, and raise objections to the motion. See *c.f. Peterson*, 313 Ill. App. 2d at 10-12 (where the trial court erred when it transformed a motion for sanctions into a summary judgment motion and then

dismissed the case, the reviewing court noted that discovery had been stayed, the plaintiff did not have an opportunity to respond and was deprived of "an opportunity to conduct discovery on the relevant issues, present evidence and argue against dismissal").

¶ 118    Moreover, as discussed below, because plaintiff could not establish damages for conscious pain and suffering and consequently could not establish an element of his survival action, there were no genuine issues of material fact for the jury to consider. See *Seef*, 311 Ill. App. 3d at 18-20 (where the trial court dismissed the case after the defendant moved to dismiss based on the trial court's ruling on a motion in *limine*, the reviewing court concluded that regardless of whether the defendant's motion was a motion to dismiss or an untimely motion for summary judgment, "there were no genuine issues of material fact for a jury to consider"). Even if the court erred, the court's dismissal did not result in any prejudice to plaintiff. See *Okic v. Fullerton Surgery Center, Ltd.*, 2019 IL App (1st) 181074, ¶¶ 81-85 (where the trial court erred by granting the defendants' motions *in limine*, which were improper and untimely dispositive motions, the reviewing court concluded that the error did not require reversal because it "resulted in no actual prejudice" to the plaintiff).

¶ 119    We now turn to whether plaintiff set forth sufficient evidence of Arindam's conscious pain and suffering to support his survival action. The court dismissed plaintiff's survival action for "lack of evidence to support it."

¶ 120    "A survival action allows for recovery of damages for injury sustained by the deceased up to the time of death" whereas "a wrongful death action covers the time after death and addresses the injury suffered by the next of kin due to the loss of the deceased rather than the injuries personally suffered by the deceased prior to death." (Internal quotations omitted.) *Carter*, 2012 IL 113204, ¶ 34 (quoting *Wyness v. Armstrong World Industries, Inc.*, 131 Ill. 2d 403, 410-12 (1989)).

The Survival Act " 'allows a representative of the decedent to maintain those statutory or common law actions which had already accrued to the decedent before he died.' " *Wyness,* 131 Ill. 2d at 410-11 (quoting *National Bank of Bloomington v. Norfolk & W.R. Co.,* 73 Ill. 2d 160, 172 (1978)). "Such an action preserves the right of action for a personal injury that accrued before the death of the injured person and preserves causes of action relating to, *inter alia*, prolonged pain and suffering, which would otherwise be extinguished upon the injured party's death." *Cretton v. Protestant Memorial Medical Center, Inc.*, 371 Ill. App. 3d 841, 846 (2007).

¶ 121    To recover damages for pain and suffering, the plaintiff must present evidence that the injured party was conscious before death. *Clarke v. Medley Moving & Storage, Inc.*, 381 Ill. App. 3d 82, 89 (2008); *Hall v. National Freight, Inc.,* 264 Ill. App. 3d 412, 427 (1994). "[I]n presenting such a claim, the evidence involved must do more than provide mere speculation that the decedent was conscious and suffered pain." *Ellig v. Delnor Community Hospital*, 237 Ill. App. 3d 396, 402 (1992). Further, to establish conscious pain and suffering, medical testimony is not required "where lay testimony describing a decedent's actions prior to death coupled with evidence concerning his injuries is sufficient to support a recovery." *Hall*, 264 Ill. App. 3d at 427. As such, "damages for conscious pain and suffering may be sustained where the decedent was shown to have been conscious prior to death and there is evidence from lay witnesses regarding what took place prior to the cessation of consciousness." *Id.* at 427-28.

¶ 122    To support his argument that he set forth sufficient evidence of Arindam's conscious pain and suffering, plaintiff relies on Dr. Curly's deposition testimony, the emergency medicine physician who saw Arindam in the hospital when he was taken there after he collapsed in 2012. At oral argument, plaintiff's counsel argued that she may have called Dr. Curly to testify at trial. However, the record shows that plaintiff did not intend to call Dr. Curly to testify at trial. When

the court dismissed plaintiff's survival action, the court noted that plaintiff was calling only three witnesses at trial—Dr. Kahn, plaintiff, and Arindam's father—and that Dr. Curly was not going to testify, which plaintiff's counsel did not dispute. Accordingly, because Dr. Curly was not going to testify at trial, plaintiff cannot rely on his deposition testimony to support his argument that he established sufficient evidence to create a question of fact regarding whether Arindam experienced conscious pain and suffering.

¶ 123 Further, to the extent plaintiff argues that his expert, Dr. Kahn, would "cover" the testimony of Dr. Curly, he has not demonstrated that the portions of Dr. Curly's testimony upon which he relies would be admissible through Dr. Kahn's testimony. Plaintiff relies on Dr. Curly's testimony regarding certain notes contained in Arindam's medical records relating to Arindam's "coworkers" witnessing him report feeling lightheaded before he collapsed and the EMT records noting "seizure like activity" for him at the scene. Plaintiff did not identify as witnesses at trial either Arindam's coworkers who witnessed Arindam's report of feeling lightheaded before he collapsed, or the EMT workers who witnessed his "seizure like activity." Dr. Kahn's testimony about the notes recorded in the medical records regarding what Arindam's coworkers and the paramedics witnessed at the scene before and after he collapsed would be hearsay. See *People v. Moss*, 205 Ill. 2d 139, 159 (2001) ("Hearsay is an out-of-court statement offered to prove the truth of the matter asserted."). Plaintiff has not established that a hearsay exception applies to any testimony from Dr. Kahn about the notes contained in Arindam's medical records. Accordingly, testimony about the observations of Arindam made by his coworkers and the EMTs as noted in the medical records would have been inadmissible as substantive evidence through Dr. Kahn.

¶ 124 Plaintiff asserts that Judge Gillespie had previously denied defendants' motion for summary judgment on the survival claims, finding that there were sufficient questions of fact on

whether Arindam experienced conscious pain and suffering. However, in April 2020, in denying defendants' motion, Judge Gillespie cited Dr. Curly's deposition testimony. Specifically, he cited Dr. Curly's testimony wherein he stated Arindam's cause of death was " 'cardiac dysrhythmia for about one hour,' " the "ER records noted that Arindam's coworkers said he felt lightheaded moments before he collapsed," and the "ER records indicated that Arindam was jerking and shaking upon collapsing." As explained above, plaintiff chose not to call Dr. Curly at trial and no such evidence would have been admitted. Even if Dr. Curly had testified at trial, all of the statements on which plaintiff relies contain multiple layers of hearsay for which plaintiff has not established any hearsay exception.

¶ 125 In sum, the court properly dismissed plaintiff's survival action because plaintiff did not set forth sufficient admissible evidence to support that Arindam experienced conscious pain and suffering before he died.

¶ 126 III. CONCLUSION

¶ 127 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 128 Affirmed.